# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MARIJA ADAMS, individually, and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> GATESTONE & CO. INTERNATIONAL INC., <br><br> Defendant. | Case No. 1:20-cv-05187 |

## CLASS ACTION COMPLAINT

**NOW COMES** Plaintiff, MARIJA ADAMS, individually, and on behalf of all others similarly situated, through undersigned counsel, complaining of Defendant, GATESTONE & CO. INTERNATIONAL INC., as follows:

## NATURE OF THE ACTION

1. This action is brought pursuant to Fed. R. Civ. P. 23 by Plaintiff, individually, and on behalf of all others similarly situated, seeking redress for Defendant's violation(s) of the Fair Debt Collection Practices Act (the "FDCPA"), 15 U.S.C. § 1692 *et seq.*

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

3. Venue in this district is proper under 28 U.S.C. § 1391(b)(2).

## PARTIES

4. MARIJA ADAMS ("Plaintiff") is a natural person, over 18-years-of-age, who at all times relevant resided at 3618 East 107th Street, Floor 1, Chicago, Illinois 60617.

5. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3).

6. GATESTONE & CO. INTERNATIONAL INC. ("Defendant") is a corporation organized and existing under the laws of the state of Delaware.

7. Defendant maintains a principal place of business at 1000 North West Street, Suite 1200, Wilmington, Delaware 19801.

8. Defendant is a "debt collector" as defined by 15 U.S.C. § 1692a(6).

9. Defendant uses instrumentalities of interstate commerce and the mail in its business – the principal purpose of which is the collection of debt owed or due or asserted to be owed or due another.

## FACTUAL ALLEGATIONS

10. Plaintiff applied for a credit card with BMO Harris Bank, N.A.

11. Upon approval, BMO Harris Bank, N.A. mailed Plaintiff a credit card bearing an account number ending in 7743.

12. Plaintiff activated this card and began using her card for personal and household expenses.

13. Over time, Plaintiff made $3,644.80 in charges to this card.

14. However, Plaintiff's financial situation changed, Plaintiff defaulted on payments, and Plaintiff's $3,644.80 balance was charged-off and referred for collection.

15. Plaintiff's $3,644.80 balance is a "debt" as defined by 15 U.S.C. § 1692a(5).

16. Defendant mailed Plaintiff a letter, dated February 4, 2020 (the "Letter"), which stated:

> Date: February 04, 2020
> Reference # 71-12200290
> Creditor: BMO Harris Bank, N.A.
> Account #: ************7743
> Amount Owing: $3,64.80

### SETTLEMENT OFFER

Dear Sir/Mme.,

Your account has been placed with Gatestone & Co. International Inc., a collection agency.

Gatestone & Co. International Inc. is prepared to present you with an opportunity to settle your account. We are ready to settle your account for only $2,733.60. Upon receipt and clearance of the settlement amount, your account will be settled and no further collection activities will take place.

To take advantage of this offer, you must contact us at (866) 653-6252 to finalize this settlement. The payment must be received in our office within ten days from the date of this letter. This offer may be revoked at any time.

This communication from a debt collector is an attempt to collect a debt. Any information obtained will be used for that purpose. Calls to or from our company may be monitored or recorded for quality assurance purposes.

Online check payments can be made on our website at www.gatestoneco.com with the use of this security code 684750.

Sincerely,
Allyson Langbehn
(866)653-6252

17. The Letter is a "communication" as defined by 15 U.S.C. § 1692a(2).

18. The Letter did not say "[w]e are not obligated to renew any offers provided."

19. Instead, the Letter stated: "[t]he payment must be received in our office within ten days from the date of this letter" whilst also stating "[t]his offer may be revoked at any time."

20. On information and belief, however, Defendant's "settlement offer" was perpetual; and was likely to be "re-extended" to Plaintiff.

21. In other words, Defendant would have settled Plaintiff's account for $2,733.60 at any time.

22. On information and belief, Defendant did not intend to revoke their "settlement offer" within the next ten days.

23. Alternatively, Plaintiff was led to believe that even if they paid $2,733.60 to Defendant within ten days, Defendant's offer would be revoked, Defendant would apply Plaintiff's

payment to Plaintiff's $3,644.80 balance, and continue collection on Plaintiff's remaining $911.20 balance.

24.     The Letter created a false sense of urgency and sought to pressure Plaintiff into accepting Defendant's "settlement offer" – fearing she would have no further chance to settle her account for less than the full amount.

## DAMAGES

25.     Congress enacted the FDCPA to rein in certain "evils" associated with debt collection," *Bentrud v. Bowman, Heintz, Boscia & Vician, P.C.*, 794 F.3d 871, 874 (7th Cir. 2015), because existing legal remedies were, in its judgment, "inadequate to protect consumers."  15 U.S.C. § 1692(b).

26.     To address those practices, the FDCPA imposes a "rule against trickery." *Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC*, 480 F.3d 470, 473 (7th Cir. 2007); see also O'Rourke v. Palisades Acquisition XVI, LLC, 635 F.3d 938, 941 (7th Cir. 2011) (noting that the FDCPA's prohibitions "keep consumers from being intimidated or tricked by debt collectors").

27.     The statute thus gives debtors a right to receive accurate information, which they can enforce against debt collectors by bringing suit under the FDCPA. *See Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757 (7th Cir. 2009) ("The [FDCPA] is designed to provide information that helps consumers to choose intelligently ... .").

28.     The value of receiving truthful information about one's financial affairs—and the ill effects of receiving misleading information—may be hard to quantify, especially where, as here, Plaintiff did not act upon the misinformation.

29.     But being misled in violation of an anti-trickery statute like the FDCPA is a concrete harm nevertheless. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373-74, 102 S.

Ct. 1114, 71 L. Ed. 2d 214 (1982) (holding that a plaintiff "who has been the object of a misrepresentation made unlawful" by federal statute suffered an injury in fact and thus had Article III standing).

30. The Letter deceived Plaintiff into believing, *inter alia*, that once ten days passed, she would lose the ability to satisfy her account for less than the amount owed

31. Concerned with having had her rights violated, Plaintiff was forced to retain counsel; therefore, expending time and incurring attorney's fees to vindicate her rights.

## **CLASS ALLEGATIONS**

32. All Paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

33. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23, individually, and on behalf of all others similarly situated ("Putative Class").

34. The Putative Class is defined as follows:

> *All natural persons residing in the State of Illinois (a) that received a correspondence from Defendant containing similar settlement offer language highlighted in Paragraph 19; (b) within the one (1) year preceding the date of this complaint through the date of class certification; and (c) in connection with the collection of a consumer debt owed to BMO Harris Bank, N.A.*

35. The following individuals are excluded from the Putative Class: (1) any Judge presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Putative Class; (5) the legal representatives, successors or assigns of any such executed persons;

and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released.

    **A.    Numerosity:**

36.    Upon information and belief, Defendant mailed no less than 40 similar letters to consumers nationwide and within the state of Illinois.

37.    The exact number of members of the Putative Class are unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable.

38.    Members of the Putative Class can be objectively identified from records of Defendant to be gained in discovery.

    **B.    Commonality and Predominance:**

39.    There are many questions of law and fact common to the claims of Plaintiff and the Putative Class, and those questions predominate over any questions that may affect individual members of the Putative Class.

    **C.    Typicality:**

40.    Plaintiff's claims are representative of the claims of other members of the Putative Class.

41.    Plaintiff's claims are typical of members of the Putative Class because Plaintiff and members of the Putative Class are entitled to damages as result of Defendant's conduct.

    **D.    Superiority and Manageability:**

42.    This case is also appropriate for class certification as class proceedings are superior to all other available methods for the efficient and fair adjudication of this controversy.

43.    The damages suffered by the individual members of the Putative Class will likely be relatively small, especially given the burden and expense required for individual prosecution.

44. By contrast, a class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

45. Economies of effort, expense, and time will be fostered and uniformity of decisions ensured.

### E. Adequate Representation:

46. Plaintiff will adequately and fairly represent and protect the interests of the Putative Class.

47. Plaintiff has no interests antagonistic to those of the Putative Class, and Defendant has no defenses unique to Plaintiff.

48. Plaintiff has retained competent and experienced counsel with substantial experience in consumer law.

### CLAIMS FOR RELIEF

### COUNT I:
### Fair Debt Collection Practices Act (15 U.S.C. § 1692 *et seq.*)

49. All Paragraphs of this Complaint are expressly adopted and incorporated herein as though fully set forth herein.

### Violation(s) of 15 U.S.C. § 1692e

50. Section 1692e provides:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section.
>
>     (2) The false representation of –
>
>         (A) the character, amount, or legal status of any debt;

7

    (B) any services rendered or compensation which may be lawfuly received by any debt collector for the collection of a debt.

  (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

  (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

51. Defendant violated 15 U.S.C. §§ 1692e, e(2)(A) and e(10) by using language that implied that Plaintiff only had a limited time to take advantage of a settlement offer, when, in fact, Defendant was likely to continue to renew their offer, and would certainly be pleased to collect Plaintiff's payment at any time.

52. Defendant's deliberate language reinforced the idea that if Plaintiff did not act immediately, she may lose the opportunity to do so forever. *See Muha v. Encore Receivable Mgmt.*, 558 F.3d 623, 629 (7th Cir. 2009) ("Confusing language in a dunning letter can have an intimidating effect by making the recipient feel that he is in over his head and had better pay up rather than question the demand for payment.").

53. The intimidating effect was magnified in this case by the reference to revocation of settlement offer at any time.

54. In *Evory v. RJM Acquisitions Funding LLC*, 505 F.3d 769 (7th Cir. 2007), the Seventh Circuit noted the tension between allowing creditors to use persuasive language to recover debts, and protecting unsophisticated consumers from "false, deceptive, or misleading representation." *See* 15 U.S.C. § 1692e(2)(A). *Evory*, 505 F.3d at 775-76. In other words, creditors often use language that implies that debtors only have a limited time to take advantage of a settlement offer, when, in fact, most creditors continue to renew their offers, and would be pleased to collect a creditor's money at any time. As the opinion notes, "[t]o accommodate the

competing goals of the statute, we fashioned a safe harbor that would protect the consumer 'against receiving a false impression of his options' while encouraging debt collectors to make settlement offers." *Evory*, 505 F.3d at 775-76. That safe harbor language is as follows: "We are not obligated to renew this offer."

55. The word "obligated" is strong and even the unsophisticated consumer will realize tat there is a renewal possibility but that it is not assured.

56. Defendant violated 15 U.S.C. §§ 1692e, e(5) and e(10) through its threat to revoke their "settlement offer" at any time.

57. On information and belief, Defendant did not intend to revoke their "settlement offer" within the next ten days.

58. The threat is potentially deceiving as to the most basic element of the parties' relationship – the terms of payment for the debt, namely the time in which to pay. *See Al v. Van Ru Credit Corp*., 2019 U.S. Dist. LEXIS 6321, at 8-9 (E.D. Wis. Jan. 14, 2019); *see also Evory* 505 F.3d at 775-76.

59. Plaintiff may enforce the provisions of 15 U.S.C. §§ 1692e, e(2)(A), e(5) and e(10) pursuant to section k of the FDCPA (15 U.S.C. § 1692k) which provides "any debt collector who fails to comply with any provision of [the FDCPA] with respect to any person is liable to such person in an amount equal to the sum of -

(1) any actual damage sustained by such person as a result of such failure;

(2)

    (A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000.00; or

(3) in the case of any successful action to enforce the foregoing liability, the costs of the action, together with reasonable attorney's fees as determined by the court.

**WHEREFORE**, Plaintiff requests the following relief:

A. an order granting certification of the proposed class, including the designation of Plaintiff as the named representative, the appointment of the undersigned as Class Counsel, under the applicable provisions of Fed. R. Civ. P. 23;

B. a finding that Defendant violated 15 U.S.C. §§ 1692e, e(2)(A), e(5) and e(10);

C. an order enjoining Defendant from additional violation(s) of 15 U.S.C. §§ 1692e, e(2)(A), e(5) and e(10);

D. an award of any actual damages sustained by Plaintiff and the Members of the Putative Class as a result of Defendant's violation(s);

E. an award of such additional damages, as the Court may allow, but not exceeding $1,000.00;

F. an award of such amount as the Court may allow for all other class members, not to exceed the lesser of $500,00 or 1 per centum of the net worth of Defendant;

G. an award of costs of this action, together with reasonable attorney's fees as determined by this Court; and

H. an award of such other relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

DATED: September 2, 2020            Respectfully submitted,

**MARIJA ADAMS**

By: */s/ Joseph S. Davidson*

Joseph S. Davidson
LAW OFFICES OF JOSEPH P. DOYLE LLC
105 South Roselle Road
Suite 203
Schaumburg, Illinois 60193
+1 847-985-1100
jdavidson@fightbills.com